RECEIVED

NOT FOR PUBLICATION

SEP 29 2016

AT 8:30_____M
WILLIAM T. WALSH
CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

DIGITAL WHOLESALE OF NEW YORK,
LLC a/b/a DWNY, LLC,

      Plaintiff,

v.

AMERICAN EAGLE TRADING GROUP,
LLC, KENNY MANUS a.k.a. KEN MANUS,
KURT MARSHALL, & JOHN DOES 1-10,

      Defendants.

Civ. No. 16-3487

OPINION

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter is before the Court upon the partial motion to dismiss brought by Defendants

American Eagle Trade Group, LLC and Kurt Marshall ("Defendants"). (ECF No. 9). Plaintiff

Digital Wholesale of New York, LLC ("Plaintiff") opposes via letter to the Court dated

September 19, 2016. (ECF No. 13.) While this is an improper format and date of submission for

filing opposition (Local Rule 7.1(d)), the Court will consider the opposition letter pursuant to its

discretionary powers. The Court has decided the motion based on the written submissions of the

parties and without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons stated

herein, Defendants' motion will be granted in part and denied in part.

## BACKGROUND

This case concerns a contract for the sale of American Eagle merchandise, and

Defendants' alleged breach of that contract. Plaintiff's allegations are as follows: Plaintiff sells

consumer goods on Amazon.com, and provides consulting services to other Amazon sellers.

1

(Compl. ¶ 5, ECF No. 1). On May 1, 2015, Samuel Cohen, a representative for Plaintiff, met Defendant Manus,[1] who stated that he was a sales representative for American Eagle. (*Id.* at ¶¶ 6-7). Defendant Manus offered to sell overstocked American Eagle merchandise to Plaintiff that was brand new and undamaged. (*Id.* at ¶¶ 8-10). On May 29, 2015, Plaintiff purchased $30,750 worth of merchandise from Defendant American Eagle Trading Group. (*Id.* at ¶ 11). Upon receipt, Plaintiff discovered the goods were not what Defendant Manus had promised. (*Id.* at ¶ 12). Defendant Manus offered to exchange the merchandise for other items, and give Plaintiff a credit for some of the merchandise. (*Id.* at 13).

On July 16, 2015, Mr. Cohen met with Defendant Manus and Defendant Marshall in Miami, Florida. (*Id.* at ¶ 14). Both defendants showed Mr. Cohen Defendant American Eagle Trading Group's business operations in Miami, thus allegedly demonstrating that Defendant Manus was an employee or agent of the company. (*Id.*). Mr. Cohen was shown brand new merchandise with the original tags intact. (*Id.* at ¶ 15). That same day, Plaintiff purchased $123,762.33 worth of this new merchandise. (*Id* at ¶ 15-16). Defendant Manus followed up with an email promising that the merchandise was "new and grade A products" and that Plaintiff would receive a refund for any defective products. (*Id.* at ¶ 18). Prior to receipt of the July 16th order, Plaintiff placed three additional orders totaling $34,550. (*Id.* at ¶ 21).

Many of the goods from the July 16th order were sent directly to Plaintiff's consulting clients, who also sell merchandise on Amazon.com. (*See id.* at ¶¶ 5, 17, 22). Starting on August 21, 2015, Plaintiff began receiving complaints from clients who received goods from the July 16th order. (*Id.* at ¶ 22). The quality of the goods was not the same as what Mr. Cohen saw in Miami nor what Defendant Manus had promised. (*Id.*). The goods were damaged and

---

[1] Defendant Manus has not yet appeared in this action.

2

unsellable, and Plaintiff consequently had to refund all of its consulting clients and pay for the return shipping costs. (*Id.* at ¶ 23). Due to these problems, all defendants agreed to take back the merchandise and fully refund Plaintiff. (*Id.* at ¶ 27).

Plaintiff returned all of the merchandise to Defendant American Eagle Trading Group's warehouse in Passaic, New Jersey. (*Id.* at ¶ 28). Defendant Manus and other employees accepted the merchandise. (*Id.* at ¶ 29). Defendant Manus promised to give Plaintiff's driver a bill of lading for the merchandise, as required by law, but instead kept him waiting for several hours before promising to email the bill of lading at a later date. (*Id.* at ¶ 30). Defendant Manus never sent the bill of lading. (*Id.*).

Plaintiff never received repayment of the $186,962.33 it paid for the returned merchandise. (*Id.* at ¶ 31). Plaintiff believes that Defendant Manus sold the merchandise at a public liquidation sale. (*Id.*). Plaintiff additionally believes that Defendant Manus was previously indicted on June 4, 2015 for several counts including theft by unlawful taking, receiving stolen property, and fencing. (*Id.* at ¶ 32). Plaintiff believes that Defendant Manus was engaged in receiving and selling stolen goods as early as 2012. (*Id.* at ¶ 34). Plaintiff therefore believes that defendants Kurt Marshall and American Eagle Trading Group knew or should have known about Defendant Manus' alleged criminal activities prior to allowing him to receive Plaintiff's merchandise at the Passaic warehouse. (*Id.* at ¶ 35). Lastly, Plaintiff alleges that defendants Kurt Marshall and American Eagle Trading Group worked in conjunction with Defendant Manus and participated in his taking of Plaintiff's returned merchandise and selling it without refunding Plaintiff. (*Id.* at ¶ 36).

## PROCEDURAL HISTORY

Plaintiff filed a complaint against the defendants in New Jersey state court on March 21, 2016. (ECF No. 1). Defendants Kurt Marshall and American Eagle Trading Group removed the

3

case to this Court on June 16, 2016. (*Id.*). On August 8, 2016, defendants Kurt Marshall and American Eagle Trading Group filed a partial motion to dismiss with a request for an extension of time to answer the remaining portions of Plaintiff's complaint. (ECF No. 9). This motion is presently before the Court. Defendants filed a reply brief on August 31, 2016. (ECF No. 11). Plaintiff filed an opposition letter on September 19, 2016 (ECF No. 13) accompanied by an amended opinion (ECF No. 12), which "voluntarily remov[ed]… Counts Six, Seven, Eight, and Nine as against American Eagle and Kurt Marshall, as well as Count Eleven as against all Defendants" (ECF No. 13).

## DISCUSSION

### I. Procedural Issues

On August 31, 2016, Defendants asked the Court to grant the partial motion to dismiss without reaching the merits because it was unopposed. While a court may grant an unopposed motion without reaching the merits, this Court declines to do so.

In its opposition letter on September 19, 2016, Plaintiff stated that it voluntarily removed Counts Six, Seven, Eight, and Nine as to American Eagle Trading Group and Kurt Russell, and Count Eleven as to all Defendants. (ECF No. 13). Plaintiff provided an amended complaint to that effect.

A plaintiff may file an amended complaint under two circumstances: 1) within 21 days of original filing, prior to any answer being filed, 2) within 21 days of a responsive pleading or Rule 12(b), (e), or (f) motion, or 3) with written consent of the opposing party or leave of the court. (Fed. R. Civ. P. 15(a)).

In this case, Plaintiff seeks to amend its complaint of its own initiative, 42 days after Defendants filed their motion to dismiss and prior to any ruling by the Court or leave from the Court to file an amended complaint. There is no basis for this action nor justification offered.

4

Thus, Plaintiff's Amended Complaint (ECF No. 12) is dismissed and the Court addresses Plaintiff's original complaint (ECF No. 1-1).

## II.   **Motion to Dismiss**

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009); *see also Connelly v. Lane Const. Corp.*, No. 14-3792, 2016 WL 106159 (3d Cir. Jan. 11, 2016). However, the court may disregard any conclusory legal allegations. *Fowler*, 578 F.3d at 203. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). If the complaint does not demonstrate more than a "mere possibility of misconduct," the complaint must be dismissed. *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

Defendant seeks to dismiss six of Plaintiff's fourteen counts under Federal Rule of Civil Procedure 12(b)(6). The Court will address each challenged count below.

## A.   **Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing**

Every contract governed by New Jersey law contains an implied covenant of good faith and fair dealing. *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 288 (3d Cir. 2000). The implied covenant of good faith and fair dealing requires that "neither party shall do

5

anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* Furthermore, the implied covenant "is an independent duty and may be breached even where there is no breach of the contract's express terms." *Id.* To state it most broadly, a "plaintiff may be entitled to relief under the covenant [of good faith and fair dealing] if its reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose." *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396 (2005) (alteration in original)).

However, a plaintiff may not pursue a claim for a breach of the implied covenant of good faith and fair dealing if the claim is duplicative of the plaintiff's breach of contract claim. *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267, at *5 (D.N.J. Feb. 24, 2016); *Cambridge Mgmt. Grp., LLC v. Robert A. Kosseff & Associates, P.C.*, No. 05-3402, 2007 WL 2084895, at *4 (D.N.J. July 18, 2007).

Here, Plaintiff alleges that Defendant failed to provide new, Grade-A merchandise with tags and failed to reimburse Plaintiff for the amount paid when Plaintiff returned the goods to Defendant. This appears to be a breach of contract claim. In that case, Count Three, the claim for breach of the covenant of good faith and fair dealing, would be duplicative of the breach of contract claim and would be dismissed.

However, there appears to be a factual dispute about whether the contract stated that Defendant was to provide "new," "first quality," "Grade-A" merchandise, and whether there was a reimbursement mechanism for the cost of the goods if Defendant failed to provide appropriate quality merchandise. (ECF No. 13 at 6). If the terms that merchandise must be "new," "first quality," and "Grade A" were not included in the contract, or the reimbursement mechanism was not included in the contract, Plaintiff might not have a breach of contract claim because the

6

Defendant had not breached the express terms of the contract. In that case, Plaintiff would have a non-duplicative claim for a breach of covenant of good faith and fair dealing.

Thus, due to the outstanding factual dispute between parties, construing the law and facts in the light most favorable to the plaintiff, the motion to dismiss Count Three must be denied.

**B.      Counts VI and VII – RICO and Racketeering**

The RICO statute was passed to "undermin[e] organized crime's influence upon legitimate businesses" and respond to "the need to protect the public from those who would run organizations in a manner detrimental to the public interest." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 165 (2001); *see also Prudential Ins. Co. of Am. v. Bank of Am., Nat. Ass'n*, 14 F. Supp. 3d 591, 614 (D.N.J. 2014), *reconsideration granted in part*, No. CIV.A. 13-1586 SRC, 2014 WL 2999065 (D.N.J. July 2, 2014) (finding that both the Third Circuit and the New Jersey Supreme Court have held consistently that the NJRICO statute should be interpreted in conformity with the federal RICO statute). RICO cases "are big cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010) (citing *Limestone Dev. Corp. v. Vill. of Lemont,* 520 F.3d 797, 803 (7th Cir. 2008)). Thus, the complaint must include "enough factual matter (taken as true) to suggest each required element of the claim alleged... before allowing a potentially massive factual controversy to proceed." *Id.* (citing *Phillips v. County of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008)).

7

A RICO claim requires proof of four elements:

> (1) the existence of an enterprise affecting interstate commerce; (2) that
> Defendants were employed by or associated with the enterprise; (3) that the
> Defendants participated, directly or indirectly, in the conduct or affairs of the
> enterprise; and (4) that the Defendants participated through a pattern of
> racketeering activity that must include the allegation of at least two (2)
> racketeering acts.

*Hollis-Arrington v. PHH Mortg. Corp.*, 205 Fed.Appx. 48 (3d Cir. 2006) (interpreting 18

U.S.C.A. § 1962(c)).

An "enterprise" is a "single entity that was formed for the purpose of working together,

that is, acting in concert." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010)

(citing *Elsevier Inc. v. W.H.P.R., Inc.,* 692 F.Supp.2d 297, 307 (S.D.N.Y.2010)). To establish

liability under section 1962(c), "one must allege and prove the existence of two distinct entities:

(1) a "person"; and (2) an "enterprise" that is not simply the same "person" referred to by a

different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Where a

company and its contractors were allegedly engaged in racketeering activity, the RICO person

and RICO enterprise were identical and the RICO claim dismissed. *Zavala v. Wal-Mart Stores,*

*Inc.*, 447 F. Supp. 2d 379, 383 (D.N.J. 2006), *aff'd sub nom. Zavala v. Wal Mart Stores Inc.*, 691

F.3d 527 (3d Cir. 2012).

In this case, Plaintiff alleges that defendants Kurt Marshall and American Eagle Trading

Group knew or should have known about Defendant Manus' alleged criminal activities, worked

in conjunction with Defendant Manus, and participated in Defendant Manus' taking of Plaintiff's

returned merchandise and selling it without refunding Plaintiff. Plaintiff argues this is sufficient

to constitute racketeering and a RICO enterprise. However, these allegations, even if presumed

true, do not amount to organized crime of the type targeted by the RICO statute. Furthermore,

the Plaintiff did not allege a RICO enterprise distinct from the persons of Kurt Marshall, Manus,

8

and American Eagle Trading Group. Thus, the enterprise is the same as the person, and the RICO claim must be dismissed. The Court need not reach the other substantive requirements of a RICO claim. Counts Six and Seven must be dismissed.

## C.    Count VIII – Respondeat Superior

The doctrine of *respondeat superior* does not provide an independent cause of action under New Jersey law. *Rowan v. City of Bayonne*, 474 F. App'x 875, 879 n.3 (3d Cir. 2012) (citing *Carter v. Reynolds,* 175 N.J. 402, 815 A.2d 460, 463 (2003)). Therefore, because *respondeat superior* is a theory of liability and not an independent cause of action, Count Eight is dismissed.

## D.    Count IX – Aiding and Abetting

The Third Circuit has clearly and unequivocally rejected a civil RICO aiding and abetting claim. *Pennsylvania Ass'n of Edwards Heirs v. Rightenour,* 235 F.3d 839, 844 (3d Cir.2000). Thus, Plaintiff's cause of action for aiding and abetting RICO violations fails and Count Nine is dismissed.

## E.    Count XI – Violation of New Jersey Fraud Act NJSA 56:8-1

The New Jersey Consumer Fraud Act ("CFA") protects consumers from unconscionable and fraudulent practices in the marketplace. *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 435 (D.N.J. 2012). To state a claim under the CFA, a consumer must allege: "(1) unlawful conduct by the defendant; (2) an ascertainable loss by the plaintiff; and (3) a causal connection between the defendant's unlawful conduct and the plaintiff's ascertainable loss." *Id.* (quoting *Payan v. GreenPoint Mortgage Funding*, 681 F. Supp. 2d 564, 572 (D.N.J. 2010)). Furthermore, it "is well-settled law that one must be a "consumer" in order to sue under this Act, and that commercial resellers… do not qualify as "consumers." *Conte Bros. Auto. v. Quaker State-Slick 50, Inc.*, 992 F. Supp. 709, 716 (D.N.J.), *aff'd sub nom. Conte Bros. Auto. v. Quaker State-Slick*

9

*50, Inc.*, 165 F.3d 221 (3d Cir. 1998). A consumer is "one who uses (economic) goods, and so diminishes or destroys their utilities" and one who is not a consumer "cannot sue as a consumer of goods under NJCFA." *Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F. Supp. 562, 567 (D.N.J. 1997).

Plaintiff is a seller of consumer goods on Amazon.com and consultant who sells goods to other entities who sell on Amazon.com. Therefore, Plaintiff does not use the economic goods or act as a consumer; it is a commercial reseller that does not qualify as a consumer and cannot sue under this Act. Therefore, Count Eleven is dismissed.

## CONCLUSION

For the reasons discussed above, Defendant's motion will be granted in part and denied in part, and Plaintiff's amended complaint dismissed. A corresponding order follows.

ANNE E. THOMPSON, U.S.D.J.

**Date:** 9/28/16

10